Case No. 14-4008, Susan List, et al. v. Steven Driehaus, et al. Arguments Congress, Page 1595, v. Tiffany Carwile, et al. Good morning, Your Honors. Tiffany Carwile, on behalf of the Ohio Election Commission appellant in this case. I'm getting over a cold, so I apologize if there's coughing, or if you can't hear me, please let me know. My voice is kind of going a little bit. Not a problem on our end, and wish you the best as you navigate through it. Thank you. Do you wish to reserve some time? Yes, Your Honor. I'd like to reserve three minutes. Okay. You may proceed. Thank you. If you need to take a break to drink, that's not a problem. I appreciate that, Your Honor. This case involves the exceptional request to declare an Ohio statute facially unconstitutional. In granting this request, the district court made a number of errors. In particular, the district court oversimplified the commission's position regarding false statements, failed to adequately consider the challenged laws that they regulate only fraud and defamation, and the court applied the wrong standard. The commission in this case is not arguing that all knowing false statements are unprotected. Rather, Ohio law regulates the still unprotected speech of fraud and defamation. That's not quite how it reads. I'm sorry, Your Honor? That's not quite how the statute reads. That's correct. If you look just at how the statute reads, I can understand. Just. Just at how the statute reads. Yeah, just as the statute reads. However, a number of Ohio court cases have limited the statute, and that's proper to consider when determining whether it's constitutional. Which Ohio case says it's only constitutionally prescribable fraud and defamation? I didn't think they'd said that. They say that it cannot apply to opinions. It also cannot apply to statements that are only misleading. It cannot apply to statements that do not disclose all the facts. So if there's a statement that's only partially true and they didn't disclose everything, that's not a false statement under the statute. It's also not a false statement under the statute if there's an innocent construction of the statement. I mean, I'm just getting to the question of how aggressive a court can be in, quote, saying the Ohio courts have done what you're saying. I don't really think they've done this. And that seems to be quite a bit of rewriting. Your Honor, when you take all of the manners in which the Ohio courts have construed this statute, what's left when it does apply is it applies to fraudulent situations, and it applies to defamation situations. Any situation that would fall outside of that would fall within one of the constraints that the Ohio courts have said it doesn't apply to. If we pick up the rewriting pen, can we start rewriting the enforcement regime? Your Honor, I believe the federal courts would not be able to rewrite the Ohio statute. I'm talking about the Ohio courts have looked at this and put their own constraints on it to make it constitutional. So then is this a facial challenge of the statute or not? It is, Your Honor. Okay. The plaintiffs have brought a facial challenge in the district court to Ohio statute. In prior years before this challenge, the Ohio courts had constrained the statute such that it is the Ohio Elections Commission's position that it is constitutional because it only applies to unprotected speech, fraud, and defamation. Can you end up with some real perverse incentives here where you have a person who simply wants to file a frivolous complaint, for example, and to essentially cause a candidate to have to respond with time and resources in the days before the campaign when they are focusing on the campaign? It looks to me like the complaint about a party would have to await a probable cause hearing to even deal with this totally frivolous complaint. Is there a way to weed that out real early on where it doesn't have an impact on the electoral process? The probable cause hearing, Your Honor, is what weeds out the frivolous. It is held very shortly after a complaint is heard. The speaker in that case actually does not have to appear unless they want to appear. There's no burden on the speaker to prove that what he said was true. If you read the amica, they give the impression that the speaker has to prove what they are saying is true. That's not the case. The complainant has to prove that the speech was knowingly made and knowingly false by clear and convincing evidence. But they have the benefit of the time it takes to have the probable cause hearing and a ruling from the commission, I take it, which takes time. Well, with regard to the probable cause hearing, I don't off the top of my head know how many days, but it's a very short window of time. And it would be no different. I mean, one, the attorney's fees can be recovered if it's a completely frivolous case. It would be no different than filing a frivolous lawsuit in a court. You would have to await the time to file a motion to dismiss or rule 11 sanctions. I mean, you could file a defamation case in state court or federal court and still have to have the same constraints, the discovery process. So having a process to help both the complainant and definitely help the speaker should not weigh against the commission. I guess my last point is this. I mean, you can end up with a probable cause determination on the eve of the election. That's the thing that's standing there for the voters to see. And then all these other matters get resolved after the election in terms of attorney's fees and sanctions and all that sort of stuff. It is possible, Your Honor. It's also highly possible that an intentional lie is made at the eve of the election, and that's the last thing that the voters hear. And there's no time to correct that lie because that's the last thing they hear. And that's why Ohio has this in place, to help the integrity of Ohio's elections, to prevent intentional falsehoods that would hurt the integrity and also hurt candidates and cause voter confusion and voter issues with regard to that. So both is entirely possible. I agree, Your Honor. Excuse me. It would prevent the same thing that happened in this case from happening in the next general election. I mean, in other words, it's not the exact same allegation about the same law, but it's based on the same chain of reasoning. Wouldn't you still be able, in spite of your narrowing Ohio State court cases, to have a probable cause finding a couple days before an election? It is possible, Your Honor. We're not saying that the commission is infallible. It's a seven-member commission. At times they may make a mistake. So your theory of Ohio law and how it's already been narrowly construed and as we assess the facial constitutional challenge, we should assume the exact same thing that happened before, it's still okay if that happens again, different law, different candidate. No, Your Honor. What we're saying is that – I thought you just said yes. I'm saying it's possible that it could happen. I'm not saying that it would happen. Sorry. Ohio has constrained it, and two members of a seven-member panel found probable cause in this case. However, this is not an as-applied challenge right now. They initially brought that, but when it went up to the Supreme Court on standing, it was dropped and indicated that this was just a facial challenge before this court. And so the commission's position is that when you look at a facial challenge, the initial burden is to show – the plaintiffs have initial burden to show that it's overbroad. This court's case in Speed v. Shule, it makes that clear. You looked at a Michigan statute involving panhandling, and that was the first analysis this court did, was determine whether the plaintiffs had shown that that statute was overbroad, meaning that in a substantial number of cases it reached protected speech. That's not what we have here, Your Honor. There has been no evidence from the plaintiffs that this statute reaches a substantial number of cases. Maybe it reaches their case. Maybe if they had brought an as-applied challenge, it would be a different story. But that's not what we have here. We have possibly one case where it was applied to protected speech, not a substantial number. And so we don't even get to pass the overbreath analysis in this case. What would happen if someone – there are two candidates. One is truly a Congressional Medal of Honor winner. The other candidate lies a couple days before the election, says he's lying. He's not a Congressional Medal of Honor winner. He's been lying all along. It meets all the standards for defamation. It's a knowing – it's not just reckless, it's knowing. What would happen to that case? Who is making the case, Your Honor? I'm sorry, I was a little confused. There are two opponents. It's just like anything. You have two opponents, and one of them is saying falsely that his opponent is not a Congressional Medal of Honor winner. If the Congressional Medal of Honor winner filed a complaint against that speaker, then he could be brought before the commission, and the commission would then hear that case, and they would have a probable cause hearing, and if they wanted to – and they found probable cause, it would go on. You wouldn't even concede after Alvarez that that's not prescribable? Well, Alvarez was just a – the statute that was – one didn't protect – It doesn't reach my fact pattern, but I would have thought its reasoning covers false statements about Congressional Medal of Honor winners. Your Honor, the statute in Alvarez, the Stolen Valor Act, had no constraints. It applied at any time, any place, and any manner. This statute is different. It applies only in the – it applies in elections. It applies with knowing an actual malice standard, and in addition, it applies – that case, the situation you give, would be fraudulent. They would be saying – making a fraudulent statement and a defamatory statement, both of which are unprotected speech. Alvarez clearly holds that defamation is still unprotected and fraud is still unprotected, and they – for fraud, they give examples of impersonating an officer or lying to a federal agency. None of those – neither of those, the Supreme Court noted, have monetary damage. The damage was harm to the government, and in this case, it would be harm to the candidate, but also harm to the electoral process, and that's what Ohio is most concerned with, harm to the election integrity. So in that case, it would be fraud when the speaker says the other guy is lying. What if the person lied that they were a congressional honor winner, and they weren't? That would still be fraud, Your Honor, in that case because they are trying – there's a – fraud has a couple of elements in addition to just making the statement. So you make a false statement, that would get you in trouble under the Stolen Valor Act, just making the statement. You had to have – you didn't need a purpose, and for the Ohio election law, you have to have a purpose, the purpose to affect the election, and that's what makes it a fraudulent – you have a – you're trying to induce reliance. Whether reliance actually happens doesn't matter under the fraud. If you look at both – like the cases – the statutes I cited in 1912 and 1001, both the federal statutes impersonating an officer and lying to a – Why would we need an election commission to sort that out? It seems so easy. Just a guy responds the next day. Are you kidding me? I've just searched. He's not. I just searched. He is. My opponent's a liar. Well, a couple of things with regard to that. One, we don't get to – if you don't have – if it's unprotected speech, fraud or defamation, you don't need it to be any kind of narrow tailoring or sufficient tailoring, and that kind of – the counter-speech analysis goes to that. But if we want to go there – and I understand that's what you're going – one, the Supreme Court has said on a number of occasions that a lie, when it's made in defamation, that it hurts the character of that person and it's hard to – Excuse me. Sorry. It's very hard to have a regime where you're sparing political figures from character assassination. I mean, that's just an assumption of the risk these days. Well, the Supreme Court has discussed that. I mean, they say that it's hard to rebut a lie once it's out there, that the truth rarely catches up with the lie. So for the character assassination, the Supreme Court has noted that that lie is the forefront and the truth doesn't always catch up to the lie. And in addition, you have the character assassination, but you have the harm to the elections, the integrity of election. Integrity means that you tell the truth, that you are truthful, that the elections are truthful as much as possible. And so when you have a lie, the integrity of the election process is damaged. And to repair that is not as easy as just coming forward with the truth. I mean, people hear lies all the time and they get discouraged and you find that there's no longer confidence in the elections because of all the lies. And so Ohio is trying to prevent the integrity of our elections from being devalued. And so counterspeech might be able to correct the lie for that person, for the candidate, maybe. The Supreme Court has said it's not always possible. But it doesn't help with the integrity of our elections, Your Honor. Okay. Well, your initial time has expired and you'll have your full rebuttal. Thank you, Your Honor. Good morning, Your Honors. Yakov Roth for both appellees. Your Honor, since Alvarez, both the Eighth Circuit and the Massachusetts Supreme Judicial Court have unanimously invalidated political false statement statutes just like Ohio's here. And that's because these statutes simply can't be reconciled with Alvarez. Massachusetts won those state laws, isn't it? It was, but they applied to Alvarez. And, in fact, the statute at issue here, these types of statutes, really they're much worse than the statute in Alvarez from a free speech perspective for a number of reasons. I mean, most importantly, they apply in the political context. And political speech is presumptively entitled to the highest level of constitutional protection as opposed to lying about whether you received the Congressional Medal of Honor, which is quite a bit further from the core of the First Amendment. Second, you have a much more serious chilling effect in this context, in the political context, both because it's very easy to accuse a political opponent of lying given the nature of political debate and political spin, and because of the procedures for the enforcement of this type of statute where anyone can bring a complaint and impose burdens on the speaker without even making a showing of falsity. And the Court doesn't have to take our word for it. That's what the Ohio Attorney General told the Supreme Court when this case was up there last term. And it's what the Supreme Court, in part, relied on in holding that we had standing to challenge the statute was that chilling effect. My main question for your side of the case is let's just say you're right. There does seem to be an intuition that you can regulate false statements or at least fraud and defamation in relation to elections. Is there a way to do this? Is the problem here the enforcement scheme and this state agency and the way it processes cases? I mean, when you read the Massachusetts case, which is state law, they almost make it seem like, no, there's just no room for any of this. Is that where you all at? Ohio can't do this. Well, certainly, Your Honor, there are defamation laws. Defamation laws apply to politicians just like they apply to anyone else. But creating a special protection for politicians that is really not about their reputation at all but is about ensuring that we're protecting voters from speech that the government believes the voters shouldn't hear because it's going to mislead them, that type of statute is just fundamentally incompatible with the First Amendment. So outside of – oh, go ahead. Haven't you mischaracterized it, though? This is really not protecting the people as much as it's going to the integrity of the entire process of democracy, isn't it? Well, actually, I think the premise of the democracy is that we let the voters hear all the points of view and the vigorous debate, and the people will then sift through it and determine truth or falsity in political debate. But there are no rules. There are no standards. It's just whatever the party wants to put on the air, scurrilous though it may be, untruthful though it may be, there's no protections afforded. Look, Your Honor, I think we can all agree that those types of lies are not helpful. They're not a good thing. But the question really for the court, I think, is, is it a good solution to that problem to have the government establish itself as the arbiter of truth in the political process, to set up a ministry of truth, to use Alvarez's words? That's going to happen either way. I mean, if you just rely on fraud and defamation, there's still going to be this ministry of truth that's called the courts, right? Right. So there is this historical exception for defamation, but it's much narrower and it's serving quite a different purpose. And there is this historical precedent for it that Alvarez emphasized. You know, you have citizen A harming citizen B in a very tangible way. It goes to court. There's this protection of actual malice, which the Supreme Court has put in to ensure there's enough breathing room. In that context, yes, the courts are getting involved. It's quite a much broader and more sweeping power to say, in a political debate writ large, we're going to have essentially a ministry of truth or truth police, bureaucrats deciding what is or is not, what voters should or should not hear in making their decisions. So bottom line, outside of fraud and defamation, you're conceding fraud is still okay, right? Well, I think we have to be careful about using the word fraud. I mean, the Supreme Court has said fraud is outside, is prescribable to category of unprotected speech. They're really, the cases talking about that have been in a very different context, talking about generally commercial fraud, where there's some money or property that's being induced. I don't think you can really just pull that concept and drop it into the political context and say false, you know, any false statement in political debate somehow becomes fraud. So as a minimum, there might be as applied risk there. So, okay, we apply defamation, New York Times versus Sullivan Standard, that's it. If you work for the Ohio Election Commission, you don't have a job anymore, and there's no chance you're going to have one in the future. You just can't have an enforcement regime separate from the courts, and it's just defamation law, and that's what we do. Just to be clear, the Ohio Election Commission does enforce a number of other laws, so they're not actually out of a job as a result of this lawsuit. That's a good qualifier, I'm sure from their perspective. There's a whole host of election-related requirements and filing and disclosure and all sorts of things that they enforce that are not problematic. I do think we're faced with a particular statute here that the court is considering. This court in Pestrac said, if the legislature wants to set up an entity that just sort of declares, we think this is true, we think this is false, without burdening speech, without punishing speech, that's something different, and that's involvement in the marketplace of ideas rather than interference with or intrusion on the marketplace of ideas. I think that could be a different situation if the Ohio legislature decides to go in that direction, but that's not what they've done, and I think this scheme is pretty clearly... And what, it would require clear and convincing evidence to work? I mean, because you still have the same risk of opponents using those findings, right? Well, I think the problem with the scheme, the problem with the scheme as it stands is the burdens that it imposes on the speaker and the threat and the punishment that it imposes on the speaker. So the need to hire the attorney to participate in the process, to subject yourself to discovery, as we saw in this case, and at the end of the road to have the threat of criminal penalties hanging over your head. So I realize defamation law takes you out from under the criminal, although the fraud wouldn't necessarily, but wouldn't you have some of the same pre-election problems? I mean, if we don't have this regime, isn't it possible that aggressive people running for office will just file defamation actions, seek TROs, and do all the same things? Respectfully, Your Honor, I don't think we've seen that in practice. I mean, every state has a defamation common law. I don't think that has been a problem. We do have a pretty demonstrable problem of abuse with this statute. Part of the reason for that is defamation is considerably narrower than this statute, and I think it's important to emphasize. Look, this statute also prescribes statements that are meant to promote a candidate, right? The candidate who says, I won the Congressional Medal of Honor, just like Alvarez, that itself would be covered by this statute if he did not win the Congressional Medal of Honor. That's not remotely defamation. It's a positive thing, and it covers all sorts of critiques that wouldn't qualify as defamatory under the common law. And you have a sister statute that I think is illustrative that applies the same rule to ballot initiatives, where you don't have any of the same interests that apply in defamation cases, which I think sort of proves the point. The statute's not about the same interests that defamation law is about. Defamation law is about protecting private reputations. The plaintiff will have to show some sort of injury. This is not about that. It's a fundamentally different purpose, and one that is, I think, just at its core inconsistent with the First Amendment, and that's this idea that the government has an interest in paternalistically shielding the population from the speech that it decides is false. And there are a lot of problems with that type of regime, including that if you're allowing the government to punish falsity, that means you're allowing the government to define truth and falsity in the context of political debate. Even the dissenters in Alvarez thought that was a serious problem, that if this, you know, they didn't think the Stolen Valor Act presented that type of chilling effect or that type of negative consequence, but they did make very clear in the political context you have very different concerns because there's a risk of political abuse, there's a risk of selective enforcement. These are, you know, they're very serious First Amendment harms. You raised our Pestrec case. Under your argument, what's left of Pestrec? Is it good law? Well, no, Your Honor. Not based on the question of whether this statute is constitutional. Pestrec relied on some dicta from Garrison, from New York Times versus Sullivan, for the proposition that knowingly false speech is categorically unprotected, which is what many people thought before Alvarez. But Alvarez made clear those statements from those earlier cases don't stand for that broad proposition, that they can't be exported out of the defamation context, which, you know, both Garrison and New York Times versus Sullivan were defamation cases. And I think even the commission has conceded now that proposition, that knowingly false speech is just beyond First Amendment protection altogether, is not good law anymore. And that was sort of the key part of Pestrec. Pestrec then went on to say certain other things, like, you know, if the government is just, as I was saying earlier, if the government is just adding to the marketplace of ideas, then you don't have the same type of First Amendment concerns. And I think that may still be good law after Alvarez, but that's not the statute we have here. So do you agree that the federal false statement law is constitutional, 1001? No, and Alvarez specifically addressed that and distinguished it. But it's a very different context, and it's a very different— you have very different consequences from it. If you lie to the IRS when you're filing your taxes, nobody's expecting counter-speech to come and correct that. When you're out in the political electoral campaign context and you're criticizing the IRS, and maybe you lie about something they did, we do expect the opposing candidate or opposing campaign to come in and give the opposing point of view and then let the voters make that determination. You could make false statements in a job application, like an audition. Isn't an election like an audition? I don't think so, Your Honor. Because there's no competing speech? I think the context is different. You're not talking about political speech if you're talking about applying for a government job. You're certainly not talking about any sort of chilling effect that I think the First Amendment would be concerned with. And you don't have counter-speech, which, again, in the political context, that's the default. That's sort of the core First Amendment principle is, in that context, more speech is the solution, not less speech and not government interference into the marketplace of ideas. You know, last year in McCutcheon, what the Supreme Court said was those who govern should be the last people to help decide who should govern. That's the context we're talking about here, talking about the context of elections and the people making their decisions about who should govern them and to allow the government to intercede into that process, to suppress certain points of view, I think is just deeply problematic from a First Amendment perspective. Excuse me, what would be the point of view that this would be suppressing? You said that a couple times. Oh, well, the issue is, if the prohibition is no falsity, right, then the government is making the determination what is or is not true or false. In this case, I think it's a good example. We had a very important statute that was enacted, the Affordable Care Act. Susan B. Anthony List had a certain interpretation of that statute, a very plausible interpretation of the statute, and said, you know, don't vote for candidate X. He supported the Affordable Care... He voted for the Affordable Care Act, which does X and Y. That candidate then filed a complaint against the advocacy group for the OEC, and the OEC reached a probable cause determination. Yes, there's probable cause to believe that you lied because of your interpretation of a federal statute. I think that's a really problematic situation, and it leads to a real chilling effect on even truthful speech, because any candidate can make that type of allegation, bring that type of complaint, just by doing so subjects the speaker to all sorts of costs and burdens and the threats of discovery, and that is enough to deter even truthful speech from taking place. And, you know, that's the concern that Alvarez had. It was a fairly attenuated and a hypothetical concern when you're talking about the Stolen Valor Act, given how narrow the prescription was in that case. It's a much more serious concern, I think, when you're talking about political speech and electoral speech writ large. I have a hyper-doctrinal question. Does REV apply just to viewpoint distinctions within prescribable speech or content? Does it extend as well to content-based distinctions within... That doesn't make any sense, because then you couldn't have a statute that says no fraud in car advertising. I was just going to... There's this exception if the basis for the content distinction sort of aligns with the reason why the speech is prescribable in the first place. So you can do the worst type of fighting words or the most obscene pornography. The problem here, even if the commission were right that the statute was limited to defamation, and it's not, you still have the REV problem because the limitation to political candidates... It's only defamation about political candidates. So it covers false statements favoring themselves. Yeah. That would be an example of something that... Okay, I see. All right. So I do think you do face that REV problem, even if you could somehow construe the statute as limited to defamation, which no Ohio court has ever done. Just real quickly, what have the Ohio courts said? Oh, the Ohio courts have said... Whether they've already narrowly construed it to defamation, and let's, for the sake of argument, say fraud. They've construed it in certain ways. They've construed it to say, for example, it has to be fact, not opinion. I agree with that. They've construed it to say if a reasonable reader could believe it. If there's a reasonable reading that would be true, then you're outside the scope of the statute. All of that was equally true of the statute in Alvarez. It was clear, verifiable, objective lies, and the Supreme Court still invalidated it. And none of those decisions have limited it to defamation. None of them talk about defamation. Just the statute on its face, you can't limit it to defamation because of the positive statement issue that we were discussing. So they certainly haven't limited it in that way. And as we were discussing earlier with respect to fraud, that's just an inapt category when you're talking about political debate. It's a commercial concept that's being sort of misapplied, and the Ohio courts, I don't believe, have talked about that either. Thank you, Your Honor. Thank you, Mr. Roth. And Ms. Carwell? Thank you, Your Honor. I'd like to first off respond to a response that the opposing counsel gave to Judge Bell's question about election integrity and how lies affect that. The Supreme Court in Garrison clearly said that the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, and political change is to be affected. So lies are not part of the democratic process. Lies do not further the democratic form of government. They are at odds with that. All right. We'll just allow defamatory lies. Still swimming partly that direction. No, no, we are not saying that the statute is only defamation. We strongly believe or are arguing that this also regulates fraud, and it's not only in a commercial context. Alvarez itself makes clear that it's not a commercial context. Both a number of statutes besides 1912 and 1001 were cited with regard to lying or with regard to fraud, and the court said those statutes are different because they implicate fraud. Those are different than the Stolen Valor Act because they are fraudulent. And they even noted that these don't have a monetary issue with regard to them. There's no monetary requirement for impersonating an officer. There's no monetary requirement for giving a false statement to an agency, and there's no reliance requirement. But Alvarez, the opinions in Alvarez said that is fraud. We are saying that this statute regulates fraud in the election process, that it directly harms election integrity, and that's why Ohio has an interest, a compelling interest, even if we get to that step, which we are saying we don't even need to get to that step because it is fraud, but that's what we're regulating. McIntyre, the Supreme Court case, recognized that our false statement statutes are our principal way to regulate fraud in our elections. And in a couple of real quick points, there's only three days or less between a complaint and a probable cause hearing, so there's hardly any time that the person has to wait in order to get that resolved. I think that was addressing your question, Judge Cole. The criminal element is rarely used, and that would be up to the discretion of a prosecutor to decide whether criminal charges would be brought. And the plaintiffs keep indicating that this is the political context. Garrison, particularly, makes clear that it was in a political context there, involved a politician in defamation, and the way either the government can regulate political speech is by a showing of actual malice by clear and convincing evidence. That's the gold standard, and that's what we have here, Your Honor. Actual malice, and by clear and convincing evidence. Thank you. Okay, thank you, counsel, for your arguments today. We really do appreciate them.